IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                          No. CR 22-0593 JB

VINCENT CANTONE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on Defendant Vincent Cantone's Objections to Presentence Report, filed December 28, 2023 (Doc. 52)("Objections"). The primary issues are: (i) whether a 2-level enhancement to Defendant Vincent Cantone's base offense level pursuant to § 2K2.1(a)(3) of the United States Sentencing Guideline Manual (U.S. Sent'g Comm'n 2023)("U.S.S.G." or "Guidelines"), for "a firearm that is capable of accepting a large capacity magazine" is inappropriate, because there is no evidence to suggest that the firearm that Cantone admits to possessing had a magazine that could accept more than fifteen rounds of ammunition; and (ii) whether a 4-level enhancement to Cantone's base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for "use[ing] or possess[ing] any firearm or ammunition in connection with another felony offense" is inappropriate, because Cantone allegedly did not possess the methamphetamine found inside the backpack in the vehicle Cantone was driving, and, even if Cantone possessed the methamphetamine, the connection between the firearm and the methamphetamine possession is insufficient to support the enhancement. The Court concludes that: (i) the Court will sustain Cantone's objection to the § 2K2.1(a)(3) enhancement, because the firearm Cantone admits to possessing was not designed to accept more than fifteen rounds of

ammunition; and (ii) the Court will overrule Cantone's objection to the § 2K2.1(b)(6)(B) enhancement, because the Court concludes by a preponderance of the evidence that: (a) Cantone committed felony possession of methamphetamine; and (b) the firearm Cantone admits to possessing facilitated, or had the potential of facilitating, the felony possession of methamphetamine. The Court will entertain any considerations related to a downward variance at the sentencing hearing.

### FINDINGS OF FACT

The Court takes its facts from the Presentence Investigation Report, filed January 4, 2024 (Doc. 55)("Second PSR"), the Plea Agreement, filed October 25, 2023 (Doc. 43)("Plea Agreement"), the Photograph of Cantone's Vehicle, filed January 4, 2024 (Doc. 59-1)("Photograph of Gun and Backpack"), the Albuquerque Police Department Lapel Cam Video (taken January 5, 2023), filed January 1, 2024 (Doc. 53)("First Lapel Video"), the Albuquerque Police Department Lapel Cam Video (taken January 5, 2023), filed January 4, 2024 (Doc. 60)("Second Lapel Video"), and the Audio Recording of Telephone Call With Jay Allen, filed January 8, 2024 (Doc. 62)("Allen Audio"). The Court makes its findings of fact by a preponderance of the evidence. See United States v. Williams, No. CR. 17-2556, 2020 WL 4016108, at *6 (D.N.M. July 16, 2020)(Browning, J.)(citing United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)). The evidence and information upon which the Court relies must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). The Court may

rely on hearsay if the hearsay is reliable.[1]  See United States v. Damato, 672 F.3d 832, 847 (10th Cir. 2012)("[H]earsay statements may be considered at sentencing if they bear some minimal indicia of reliability.").

    1.      On January 5, 2022, Cantone drove Jay Allen to a Motel 6 in Albuquerque, New Mexico, where Allen had a room rented.  See Allen Audio at 00:12-00:22.

    2.      Cantone was driving the vehicle, and parked it in a fire lane in the motel's parking lot.  See Second PSR ¶¶ 11-12, at 7; First Lapel Video at 00:37-00:40.

    3.      Cantone and Allen exited the vehicle, leaving open the driver's side door of the vehicle.  See First Lapel Video at 00:37-00:40; Allen Audio at 00:25-00:32.

    4.      Allen made his way up a set of stairs on the side of the motel, see First Lapel Video at 00:48-00:52, and Cantone proceeded to a fence located on the driver's side of the vehicle, where he unzipped his pants, in apparent preparation to urinate, see Second PSR ¶ 11, at 7; First Lapel Video at 00:38-00:42.

---

[1] In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the introduction of testimonial hearsay statements from witnesses not subjected to cross examination at trial violates a defendant's confrontation right under the Sixth Amendment to the United States Constitution.  See 541 U.S. at 68-69.  The United States Court of Appeals for the Tenth Circuit has concluded, however, that a court's consideration of hearsay evidence at the sentencing stage does not violate a defendant's Confrontation right.  See United States v. Bustamante, 454 F.3d 1200, 1202-03 (10th Cir. 2006)("We see nothing in Crawford that requires us to depart from our precedent 'that constitutional provisions regarding the Confrontation Clause are not required to be applied during sentencing proceedings.'" (quoting United States v. Hershberger, 962 F.2d 1548, 1554 (10th Cir. 1992))).  See United States v. Luciano, 414 F.3d 174, 179 (1st Cir. 2005)("Nothing in Crawford requires us to alter our previous conclusion that there is no Sixth Amendment Confrontation Clause right at sentencing."); United States v. Martinez, 413 F.3d 239, 243 (2d Cir. 2005); United States v. Stone, 432 F.3d 651, 654 (6th Cir. 2005); United States v. Roche, 415 F.3d 614, 618 (7th Cir. 2005); United States v. Brown, 430 F.3d 942, 944 (8th Cir. 2005); United States v. Littlesun, 444 F.3d 1196, 1200 (9th Cir. 2006); United States v. Baker, 432 F.3d 1189, 1254 n. 68 (11th Cir. 2005).

5. Albuquerque Police Department ("APD") officers observed Cantone's actions and confronted him. See First Lapel Video at 00:37-00:40; Second PSR ¶ 11, at 7.

6. Cantone acknowledged the officers, zipped up his pants, and closed the driver's side door of the vehicle. See First Lapel Video at 00:38-00:50; Second PSR ¶ 11, at 7.

7. While one officer spoke with Cantone, another officer acknowledged Allen, who was standing on the motel's balcony at the top of the stairs, and proceeded to look into the vehicle's front driver's side window. See First Lapel Video at 00:48-01:20.

8. Through the vehicle's window, the officers observed a black firearm with an extended magazine wrapped in a red bandana, which was located on the middle console between the driver and passenger seats, and an unzipped red backpack, which was located on the vehicle's passenger seat within inches of the firearm. See Second PSR ¶ 11, at 7; Photograph of Gun and Backpack.

9. Additionally, officers observed a glass pipe with burnt residue in the vehicle's middle console. See Second PSR ¶ 11, at 6.

10. Cantone's girlfriend, Emily Chavez, owned the vehicle, but had given Cantone permission to drive it. See Second Lapel Video at 26:50-28:00.

11. The firearm that the officers observed was "a Hi-Point Firearm[], model C9, 9mm pistol bearing serial number P1823891 with an extended magazine containing 7 rounds of 9mm ammunition" (the "Hi-Point Firearm"). Second PSR ¶ 16, at 8.

12. In the red backpack, officers discovered "a clear cylinder with two purple baggies which contained a total of 2.8 grams of methamphetamine; a digital scale; purple baggies; a glass pipe; and a gun cleaning kit." Second PSR ¶ 16, at 8.

13.     Cantone was driving the vehicle and had possession of the vehicle in which the Hi-Point Firearm and backpack were located on the day that he was arrested.  See Second PSR ¶¶ 11-12, at 6; Plea Agreement at 4 (referring to the vehicle in question as "my vehicle"); Allen Audio at 00:12-00:22.

14.     Cantone had possession of the Hi-Point Firearm.  See Plea Agreement at 4 ("On January 5, 2022, I knowingly possessed a Hi-Point Firearm C9 model 9mm pistol inside my vehicle in Bernalillo County, New Mexico.").

## ANALYSIS

Cantone objects both to the 2-level enhancement under § 2K2.1(a)(3) and to the 4-level enhancement under § 2K2.1(b)(6)(B) applied to his base-level offense.  See Objections at 3-9.  In response, the United States agrees with Cantone that the Court should sustain his objection to the § 2K2.1(a)(3) enhancement, see United States' Response in Partial Opposition to Defendant's Objections to Presentence Report (Doc. 52) at 5, filed January 4, 2024 (Doc. 59)("Response"), but argues that the Court should overrule Cantone's objection to the § 2K2.1(b)(6)(B) enhancement.  The Court: (i) sustains Cantone's objection to the § 2K2.1(a)(3) enhancement; and (ii) overrules Cantone's objection to the § 2K2.1(b)(6)(B) enhancement.

**I.     THE COURT SUSTAINS CANTONE'S OBJECTION TO THE U.S.S.G. § 2K2.1(a)(3) ENHANCEMENT.**

Cantone objects to a 2-level enhancement under § 2K2.1(a)(3) to his base-level offense for a "firearm that is capable of accepting a large capacity magazine."  U.S.S.G. § 2K2.1(a)(3)(A)(i).  See Objections at 8-9.  The United States urges the Court to sustain this Objection, having "confirmed that the magazine possessed by the Defendant was not designed to accept more than 15 rounds of ammunition."  Response at 5.  The United States Probation Office ("USPO") agrees that the § 2K2.1(a)(3) enhancement does not apply.  See Addendum to the Presentence Report at

1, filed January 4, 2024 (Doc. 57).[2]  In light of the determination that the magazine is not a large capacity magazine, and to account for the resultant "change in the defendant's base offense level from 22 to 20," the USPO filed an amended Presentence Investigation Report.  Second PSR at 1.  The Court, therefore, sustains Cantone's Objection to the 2-level § 2K2.1(a)(3) enhancement.

II.  **THE COURT OVERRULES CANTONE'S OBJECTION TO THE U.S.S.G. § 2K2.1(b)(6)(B) ENHANCEMENT.**

Cantone objects to the U.S.S.G. § 2K2.1(b)(6)(B) enhancement on the grounds that he did not possess the methamphetamine in the vehicle he was driving and that, even if he possessed the methamphetamine, there is not a sufficient connection between the firearm and the methamphetamine possession to support the § 2K2.1(b)(6)(B) enhancement.  See Objections at 7.  Section 2K2.1(b)(6)(B) provides for a 4-level enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  "[A]nother felony offense . . . means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."  U.S.S.G. § 2K2.1 cmt. 14(C).  See United States v. Gross, No. CR 16-0454, 2016 WL 9021829, at *15 (D.N.M. Dec. 16, 2016)(Browning, J.)("An enhancement under § 2K2.1(b)(6) may be

---

[2] The USPO states that, "[u]pon further discussion with the case agent, it was determined the magazine possessed by the defendant was capable of accepting 15 rounds of ammunition, and thus does not qualify as a large capacity magazine."  Addendum at 1.  Because the USPO concludes that the enhancement does not apply,  the Court concludes that this was a typographical error, and the USPO intends to say that the magazine is not capable of accepting 15 rounds of ammunition.  See Response at 5 ("The United States has confirmed that the magazine possessed by Defendant was not designed to accept more than 15 rounds of ammunition.").

applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted."). Application Note 14(A) to U.S.S.G. § 2K2.1 specifies that the use or possession is "in connection with" another felony offense "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. 14(A).  The Court concludes by a preponderance of the evidence that: (i) Cantone committed a felony drug possession offense; and (ii) there is sufficient evidence that the firearm facilitated or had the potential of facilitating Cantone's felony drug possession to support the § 2K2.1(b)(6)(B) enhancement.  See United States v. Washington, 11 F.3d at 1516 (explaining that the preponderance of the evidence standard applies in sentencing proceedings).  Accordingly, the Court overrules Cantone's objection to the § 2K2.1(b)(6)(B) enhancement.

    A.    **CANTONE COMMITTED FELONY DRUG POSSESSION.**

The Court concludes, by a preponderance of the evidence, that Cantone committed a felony drug possession offense.[3]  As the United States Court of Appeals for the Tenth Circuit explained in United States v. Tobanche, 643 Fed. App'x 781 (10th Cir. 2016),[4] the United States must prove

---

[3] New Mexico classifies methamphetamine as a Schedule II substance, see N.M.S.A. § 30-31-7(A)(3)(C), and makes methamphetamine possession a fourth-degree felony, see N.M.S.A. § 30-31-23(F).

[4] United States v. Tobanche, is an unpublished opinion, but the Court can rely on a Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. [. . .] However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Ords. & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).  The Court concludes that United

three elements to show a violation of N.M.S.A. § 30-31-23(E): "(1) the defendant must possess methamphetamine, (2) the defendant must know he possesses methamphetamine, and (3) the possession must occur in New Mexico." 781 Fed. App'x at 784 (citing UJI 14-3102 NMRA). A "precondition for possession of a controlled substance . . . is possession." United States v. Ferrell, 725 F. App'x 672, 680 (10th Cir. 2018). Possession may be either actual or constructive. See United States v. Ferrell, 725 F. App'x at 680. "Actual possession exists when a person has direct physical control over a thing." Henderson v. United States, 575 U.S. 622, 626 (2015). "Constructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." United States v. Little, 829 F.3d 1177, 1182 (10th Cir. 2016). "When an object can be attributed to more than one person, there must be a nexus between the defendant and the object supported by 'reasonable inferences from direct or circumstantial evidence . . . .'" United States v. Brown, 85 F.4th 1291, 1296 (10th Cir. 2023)("Brown")(quoting United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996)).

Cantone objects to the notion that he possessed the 2.8 grams of methamphetamine in the backpack, because it is "unclear whether the backpack inside the vehicle belonged to him, the other individual at the scene of the incident, or his girlfriend." Objections at 7. Despite that Cantone's girlfriend owned the vehicle, see FOF ¶ 10, at 4, and that Allen recently had occupied the vehicle with Cantone, see FOF ¶¶ 1-4, at 3, the Court concludes that Cantone had "the power and intent . . . to exercise dominion or control over" the methamphetamine, United States v. Little, 829

---

States v. Tobanche, United States v. Ferrell, 725 F. App'x 672 (10th Cir. 2018), and United States v. Fent, 199 F. App'x 724 (10th Cir. 2006), have persuasive value with respect to material issues in this case, and will assist the Court in its preparation of this Memorandum Opinion and Order.

F.3d at 1182.[5]  Because Cantone borrowed the vehicle from his girlfriend and because Cantone jointly occupied the vehicle with Allen shortly before officers confronted Cantone, the Court considers this a joint occupancy case.  See FOF ¶¶ 1-3, 10 at 3, 4; United States v. Samora, 954 F.3d 1286, 1290 (10th Cir. 2020)("[B]ecause Defendant borrowed the car from his ex-girlfriend, we consider this a joint occupancy case.").  This finding does not preclude Cantone's possession of the methamphetamine, however, so long as there is a sufficient "nexus" between Cantone and the methamphetamine.  Brown, 85 F.4th at 1296.

In Brown, the Tenth Circuit affirmed the district court's conclusion that the defendant possessed a handgun discovered in a purse on the front passenger-side floor of the vehicle Brown was driving.  See 85 F.4th at 1293.  When officers confronted Brown, he was outside of the vehicle, and Brown's girlfriend was sitting in the vehicle's passenger seat.  See 85 F.4th at 1293.  Here, as in Brown, "reasonable inferences from direct or circumstantial evidence" support that a nexus between Cantone and the methamphetamine exists, United States v. Reece, 86 F.3d at 996, and that Cantone had "knowledge of and intent to possess" the methamphetamine, Brown, 85 F.4th at 1296.  See United States v. Samora, 954 F.3d at 1290-92 (concluding that the defendant constructively possessed a firearm found "within arm's reach of the driver [in] the center console" of the vehicle that the defendant had "borrowed . . . from his ex-girlfriend earlier in the day").

First, Cantone, like Brown, was the "driver of the car."  Brown, 85 F.4th at 1296.  Second, "the [methamphetamine] was found in close proximity to the driver's seat on . . . the passenger's

---

[5]The Court concludes that Cantone did not have "[a]ctual possession" over the methamphetamine, because Cantone did not have "direct physical control over" the backpack and the methamphetamine located therein when officers confronted him.  Henderson v. United States, 575 U.S. at 626.  See United States v. Samora, 954 F.3d 1286, 1295 (10th Cir. 2020)("To prove actual possession, the Government was required to show Defendant held the firearm on the date specified in the indictment.").

seat" of the vehicle that Cantone was driving. Brown, 85 F.4th at 1296. Third, unlike in Brown, there is no evidence to suggest that the vehicle's passenger possessed the methamphetamine. In Brown, Brown's girlfriend was sitting in the passenger seat with the gun located in a purse at her feet when officers confronted Brown. See Brown, 85 F.4th at 1293. Allen, who had recently occupied the vehicle with Cantone, by contrast, was outside of the vehicle standing at the top of a set of stairs when officers encountered Cantone. See FOF ¶ 4, at 3.[6] Fourth, as in Brown, where the 9mm bullets discovered in Brown's pocket helped supply a nexus to the handgun in the purse, there is a circumstantial link between Cantone and the methamphetamine in the backpack to support a nexus here. See 85 F.4th at 1293 ("[M]ost importantly, the 9mm ammunition in his pocket was compatible with the 9mm pistol."). Namely, despite that Cantone disclaims ownership of the backpack, the backpack contained a gun cleaning kit, see FOF at ¶ 12, at 4, and Cantone had possession of the Hi-Point Firearm discovered inches from the backpack, FOF ¶ 14, at 5. Fifth, just as Brown's "history with guns" supports an inference that he possessed the firearm discovered in his vehicle, Brown, 85 F.4th at 1293, so here does Cantone's past drug abuse and drug-related convictions support an inference that he possessed the methamphetamine discovered in his vehicle, see Second PSR ¶¶ 39-40, 109, at 11, 30. Consequentially, the Court concludes by a preponderance of the evidence that Cantone committed a felony drug possession offense.

---

[6]Even if Allen also possessed the methamphetamine, this action would not preclude a finding that Cantone possessed the drugs. See United States v. King, 632 F.3d 646, 652 (10th Cir. 2011)("[A] defendant may exercise [constructive possession] personally or through others who have an adequate tie to the defendant.").

B.  **THERE IS SUFFICIENT EVIDENCE TO ESTABLISH THAT CANTONE USED OR POSSESSED THE HI-POINT FIREARM IN CONNECTION WITH THE DRUG POSSESSION OFFENSE, SUPPORTING THE 4-LEVEL ENHANCEMENT UNDER § 2K2.1(b)(6)(B).**

The Court concludes that Cantone's possession of the Hi-Point Firearm more likely than not facilitated or had the potential to facilitate Cantone's felony drug possession offense. See U.S.S.G. § 2K2.1 cmt. 14(A). "The plain and commonly understood meaning of 'facilitate' is to make easier." United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011). The Tenth Circuit has recognized that a firearm may facilitate or have the potential to facilitate felony drug possession by protecting a defendant or his drugs, see United States v. Fent, 199 F. App'x 724, 727 (10th Cir. 2006)(holding that the enhancement applied where the defendant possessed a firearm in connection with possessing methamphetamine), and by emboldening a defendant in possession of his or her illicit drugs, United States v. Justice, 679 F.3d 1251, 1255 (10th Cir. 2012)("When a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender."). In addition, the Court has described that courts are more likely to apply § 2K2.1(b)(6)(B) for felony drug possession offenses where a defendant carries a firearm in public, where the firearm is a handgun, or where the firearm is loaded or available for use. See United States v. Tobanche, 115 F. Supp. 3d 1342, 1362-64 (D.N.M. 2015)(Browning, J.).

Here, the Hi-Point Firearm was located inches from the backpack containing the methamphetamine within Cantone's easy reach; Cantone was occupying the driver's seat. See FOF ¶ 8, at 4. Cantone possessed the Hi-Point Firearm in the parking lot of a Motel 6 -- a public space. See Second PSR ¶ 2, at 4. Where, as here, the defendant is in public with illicit drugs and "a loaded firearm within easy reach, one can infer from the proximity of the weapon to the drugs is not coincidental and that the firearm 'facilitated, or had the potential of facilitating,' the drug

offense by emboldening the possessor." 679 F.3d at 1256 (no citation given for quotation). Moreover, the Hi-Point Firearm was loaded, see FOF ¶ 11, at 4, and stored openly on the front passenger seat of the vehicle, see FOF ¶ 8, at 4, where it was imminently accessible and ready to be used. See United States v. Wellington, 468 F. App'x 529, 532 (6th Cir. 2012)("[A] weapon with a chambered round and the hammer cocked raises a strong inference that Wellington was prepared to use the gun while participating in felony drug sales"). Finally, because "[t]here is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply," that Cantone possessed only a small quantity of methamphetamine is immaterial. United States v. Hammons, No. CR 07-1164, 2012 WL 119616, at *17 (D.N.M. Jan. 12, 2012)(Browning, J.). The Court concludes, therefore, by a preponderance of the evidence that the 4-level enhancement pursuant to § 2K2.1(b)(6)(B) is warranted, and the Court overrules Cantone's objection to the § 2K2.1(b)(6)(B) enhancement. The Court will, however, sustain Cantone's objection to the § 2K2.1(a)(3) enhancement for a large-capacity magazine.

**IT IS ORDERED** that: (i) the objections in Defendant Vincent Cantone's Objections to Presentence Report, filed December 28, 2023 (Doc. 52), are sustained in part and overruled in part; (ii) the objection to U.S.S.G. § 2K2.1(b)(6)(B) is overruled; (iii) the objection to U.S.S.G. § 2K2.1(a)(3) is sustained; and (iv) the Defendant's offense level is 21, criminal history category is II, and the guideline imprisonment range is 41 months to 51 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Holland S. Kastrin
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Ahmad Assed
Law Office of Ahmad Assed
Albuquerque, New Mexico

    *Counsel for the Defendant*